[Crim. No. 8269. Second Dist., Div. One. Dec. 21, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JOE L. NASH, Defendant and Appellant.

Joe L. Nash, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—Defendant Nash and one Phillips were accused of robbery. Trial by jury was waived. They were adjudged guilty. Nash appeals from the judgment.

Appellant contends that he was not identified as one of the robbers; that he and his codefendant were forced to make statements of admission and confession; and that this court erred in not appointing counsel to represent him.

Mr. Ledelman, owner of a grocery store in Los Angeles, testified: On October 11, 1961, about 6:45 p. m., the two defendants entered his store and Nash bought some candy and asked for a can of juice. While he (witness) was getting the juice, Nash knocked him down, demanded money, and took $13 from his pocket (eight one-dollar bills and a five-dollar bill). During that time, Phillips was getting money from the cash register—he took $10 (in change—silver) therefrom. Nash exhibited a butcher knife (Exhibit 1), and said he wanted more money and that he would kill the witness. Then he squeezed the witness' face and eyes and caused his face to bleed. Phillips, who was going about the store looking for money, opened the door to a backroom and caused the burglar alarm to sound. Then the robbers ran out of the store. The police caught them "right away," and within approximately five minutes brought them, in the police car, to the front of the store. He (witness) went to the car and saw the robbers in it. The same persons who robbed him had been in the store on the preceding evening and had bought a can of juice.

Officer Perretta testified that on said October 12, about 6:45

p. m., while he and Officer Perkins were driving on the street near Mr. Ledelman's store, he (witness) saw the defendants running in a westerly direction, about 20 or 30 feet west of the store, and he heard a burglar alarm. The defendants ran through a gasoline station at the corner and then ran south and were attempting to get into an automobile when the officers stopped them. At that time Phillips said that he was chasing Nash because Nash had taken his wallet. The officers took the defendants, in the police car, to the store, and Mr. Ledelman came to the car. At that time the dome light of the car was lighted, and Mr. Ledelman's face was bleeding. The officers found $13 (eight one-dollar bills and a five-dollar bill) in Nash's pocket, and they found $10.91 in Phillips' pocket (silver money). At the police station, about an hour after the arrest, he (witness) had a conversation with Nash wherein Nash's statements were freely and voluntarily made. Nash said that while he and Phillips were driving by the store they saw that the store man was alone, and that Phillips suggested that they go back and take the man's money; they entered the store and Nash asked for some juice; when the man came from behind the counter, Nash knocked him down and the man started screaming; Nash picked up a knife from a bench and tried to scare him with it; then he took money from the man's pocket; Phillips took silver money from the register, and then tripped the burglar alarm off; they got scared and ran out of the store.

Officer Fusilier, an investigating officer, testified that on October 13 (the next morning) about 9:30 o'clock he and another officer had a conversation with Nash wherein Nash's statements were freely and voluntarily made. Nash said that he and Phillips needed money and, while they were driving by the store, they saw the store man was alone, they entered the store and ordered some juice in order to get the man to come from behind the counter and away from the register; when the man came from behind the counter, Nash threw him down and took money from his pocket; when the man started screaming, Nash put a knife ''to'' the man's throat and told him to keep quiet or he would kill him; Phillips took money from the register, and went to the back of the store; the burglar alarm sounded, and they ran out of the store and were stopped by police officers.

Defendant Nash testified: On the morning of said October 12 he and Phillips had been looking for work and Phillips had gotten his unemployment check. About 2 p. m. of that day

they started drinking and gambling. They were going to a barber shop to get their hair processed, but as they drove by the shop they did not see their barber. They parked the car and went across the street to see if they could find the barber, but they could not find him. Since they had been drinking and Phillips (the driver) was "a little higher," Nash asked permission to drive the car, but Phillips would not let him drive. Then Nash snatched the car keys from Phillips and they started running to the car. When Nash was in the car and Phillips was entering it, the officers stopped them. He had never been in the store. While he was at the police station on the night of the arrest, some officers started questioning him, and he replied that he did not know what was going on. Before having other conversations with officers, Nash had said to Phillips: "[S]ince we may be put under a little pressure, you go and tell what happened" and "tell them what they want to hear and we'll have our day in court." When Officer Fusilier asked what happened, Nash told him what he wanted to hear. The officer asked him whether he robbed the man, and he replied, "Yeah." The answers which he gave, in telling the officers what they wanted to hear, were not true. During the conversations with the officers on the night of the arrest, nothing was said about anyone getting hurt if he did not tell what happened, but Nash got the impression that if he did not "cop out," it would be made hard for him. During the conversation with Officer Fusilier, he (defendant) was in fear that something unpleasant might happen to him—he had such fear because a friend of his who had recently come out of a police station was not "too good." No one told defendant that he would get hurt if he did not tell about the robbery. No officer pushed him, or leaned against him, or did anything like that.

██   Appellant's contention that he was not identified as one of the robbers is not sustainable. The store man testified that the defendants were the robbers. Within a few minutes after the robbery, the store man saw the defendants in the police car which was in front of the store. One of the arresting officers testified that he saw the defendants running in a direction which was away from the store, and at that time the defendants were about 30 feet from the store and a burglar alarm was ringing. The defendants were arrested within a few minutes thereafter. According to testimony of officers, appellant admitted the charge against him. There was ample evidence identifying appellant as one of the robbers.

■ Appellant's contention that he was forced to make statements of admission and confession is not sustainable. Testimony of the officers was that the statements of appellant were free and voluntary. Appellant did not testify that any officer or anyone used any physical force upon him or threatened him in any way or promised him anything in connection with the conversations. On the contrary he testified that no one said that he would be hurt if he did not tell what happened; and that no one pushed him or did anything like that. Appellant's testimony was to the effect that he got an impression that if he did not "cop out" it would be made hard for him.

■ Appellant contends further that this court erred in not appointing counsel for him. As shown by the records herein, this court did appoint counsel to represent appellant. The attorney who was appointed, notified the court and the appellant, by letter, that in his opinion there are insufficient grounds for a meritorious appeal. As a result of that notification and the court's examination of the record, the court made an order granting the attorney's request to be relieved as counsel for appellant. The evidence shows that, in practical effect, the appellant was caught in the act of committing the robbery. It is apparent from the facts and conclusions hereinabove stated, that this court accorded appellant his rights in the matter of appointment of counsel.

The evidence amply supports the judgment.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.